THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CRIMINAL CASE NO. 1:12-cr-00083-MR-WCM

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | O R D E R |
| | ) | |
| JAMES WARD, | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court the Defendant's "Compassionate Release Motion for Reduction of Sentence Under 18 U.S.C. § 3582(c)(1)(A)" [Doc. 38].

**I.    BACKGROUND**

At 5:43 a.m. on March 25, 2012, the Henderson County Sheriff's received a phone call from a third party requesting that a "health and welfare check" be conducted on behalf of a female at 678 Pinewood Knoll Drive, Hendersonville, North Carolina. [Doc. 17: PSR at ¶ 6]. Upon arriving at the scene, the third party reported that the Defendant James Ward had been assaulting the female, R.M., since approximately 11:30 p.m. the previous night and that the Defendant had pointed a pistol at him and threatened to

kill him if he called the police. The third party also reported to police that the Defendant had been shooting the firearm prior to their arrival. [Id. at ¶ 8].

The deputies entered the residence and as they walked into the master bedroom they smelled the odor of feces. The Defendant was on the bed snoring with his left arm over R.M., and his hand was inside her shirt holding her right breast. R.M. was lying on her back and deputies observed her face was bruised, her left eye was swollen and red, and blood was coming from her mouth. There were feces and blood on the Defendant, R.M., and the bed. Also on the bed were blood and vomit. Deputies noticed that there was feces and blood on the floor, the room was in disarray, several bullet holes were in the wall, and spent shell casings were scattered throughout the floor. On the floor next to the Defendant's side of the bed was a Ruger Mark II, .22 long rifle pistol. [Id. at ¶ 9]. The Defendant stole the Ruger .22 pistol from "J.S." [Id. at ¶¶ 23, 27].

R.M. described to the deputies the lengthy assault she had endured at the Defendant's hands. She told deputies that there were feces on her shirt and said, "he beat me until I shit." [Id. at ¶ 10]. R.M. explained that the Defendant had punched her, kicked her with his boots, dragged her by the hair, and strangled her around her throat while the Defendant was on top of

her and placing all his weight upon her. The Defendant then fired his gun 12 to 15 times within inches of R.M.'s head, striking the wall behind her with the bullets while making threats to kill her. [Id. at ¶¶ 10, 17]. R.M. suffered three broken ribs and a broken sinus cavity, as well as severe bruising and swelling. [Id. at ¶ 18].

While in custody following the incident, the Defendant attempted to obstruct justice by sending a detailed letter to his family directing them to fabricate a story which he hoped would make the assault look like an accident. The Defendant also sought for his family to cause R.M. to make a statement recanting her initial report and claim she had been pressured by police into falsely accusing the Defendant of assaulting her. [Id. at ¶ 24].

On August 21, 2012, a federal grand jury returned a Bill of Indictment against the Defendant charging him with knowingly stealing a firearm, in violation of 18 U.S.C. § 924(l) (Count One), and with knowingly possessing a stolen firearm, in violation of 18 U.S.C. § 922(j) (Count Two). [Doc. 1]. The Defendant pled guilty to both counts without a plea agreement. [Doc. 9].

In preparation for sentencing, the Court's probation office submitted a presentence report (PSR), which calculated a base offense level of 14. [Doc. 17: PSR at ¶ 36]. The probation officer further determined that the following

adjustments applied: a two-level increase for the possession of a stolen firearm under U.S.S.G. § 2K2.1(b)(4)(A), and a four-level increase for possession of a firearm in connection with other felony offenses under U.S.S.G. § 2K2.1(b)(6)(B). [Id. at ¶¶ 37, 38]. This would have yielded an offense level of 20, but a cross-reference was applied pursuant to U.S.S.G. § 2K2.1(c)(1)(A), based on the fact that the Defendant shot at and around the victim with a gun multiple times, that he made comments threatening to kill her, and that the victim sustained serious bodily injury from the Defendant beating her for an extended period of time. [Id. at ¶ 39]. This yielded an offense level of 36. [Id.]. To that, a two-level enhancement was added for the Defendant's obstruction of justice. [Id. at 42]. With these adjustments, the probation officer calculated a total offense level of 38. [Id. at 46]. With a criminal history of III, the probation officer calculated an advisory Guidelines range of 292 to 365 months. Because the maximum statutory penalty for each count was no more than ten years, however, the Guidelines term of imprisonment became 240 months. [Id. at ¶¶ 98, 99].

The Defendant's sentencing was held on December 17, 2013. At the hearing, the Court adopted the PSR with the exception of one criminal history point which did not change the Defendant's criminal history category or

Guidelines range. [Doc. 22: Statement of Reasons at 1]. The Court sentenced the Defendant below the advisory Guidelines range. The Defendant received a term of 120 months on each count of conviction, with 60 months of the term for Count Two to run concurrent with the term for Count One, for a total term of 180 months' imprisonment. [Doc. 21: Judgment at 2]. The Defendant has now served over ten years of his sentence and has a projected release date of March 25, 2025.[1]

The Defendant now moves the Court for compassionate release, arguing that "operational failures" at the Bureau of Prisons (BOP) caused an outbreak of COVID-19 at his facility and that he is at risk of serious illness or death should he be infected again, making his confinement more punitive than originally contemplated by the Court. [Doc. 38]. The Court directed the Government to respond to the Defendant's motion. [Text-Only Order dated Aug. 1, 2022]. The Government filed its Response on August 24, 2022. [Doc. 41].

---

[1] See https://www.bop.gov/inmateloc/ (last accessed Oct. 6, 2022).

## II. DISCUSSION

Section 3582(c)(1)(A), as amended by The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), permits a defendant to seek a modification of his sentence for "extraordinary and compelling reasons," if the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Here, the Government concedes that the Defendant has sufficiently exhausted his administrative remedies with BOP by requesting compassionate release from the Warden. Accordingly, the Court will proceed to address the merits of the Defendant's compassionate release request.

As is relevant here, the Court may reduce a defendant's sentence under 18 U.S.C. § 3582(c)(1)(A)(i) for "extraordinary and compelling reasons if "such reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must also consider the factors set forth in 18 U.S.C. § 3553(a), to the extent that such factors are applicable. Id.

6

Section 1B1.13 of the United States Sentencing Guidelines sets forth the Sentencing Commission's policy statement applicable to compassionate release reductions. See U.S.S.G. § 1B1.13. As is relevant here, the application note to § 1B1.13 specifies the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is:

> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, cmt. n.1(A)(ii). This policy statement, however, was adopted before the First Step Act, and the Sentencing Commission has not updated the policy statement to account for the fact that defendants are now

7

permitted to file their own motions for compassionate release. In light of these circumstances, the Fourth Circuit Court of Appeals has held that § 1B1.13 is no longer an "applicable" policy statement that constrains the discretion of the district courts in finding that "extraordinary and compelling reasons" exists to warrant a reduction in sentence. See United States v. McCoy, 981 F.3d 271, 282 (4th Cir. 2020) ("By its plain terms, . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)"). Thus, this Court is "empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise." Id. at 284 (quoting United States v. Zullo, 976 F.3d 228, 230 (2d Cir. 2020)). Nevertheless, the Court recognized, that the policy statement "remains helpful guidance even when motions are filed by defendants." Id. at 282 n.7. The Defendant bears the burden of establishing that he is eligible for a sentence reduction. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

Here, the Defendant asserts that "operational failures" at the Bureau of Prisons (BOP) caused an outbreak of COVID-19 at his facility and that he is at risk of serious illness or death should he be infected again due to a number of "major health issues." [Doc. 38 at 4-6]. The Defendant does not specify

in his motion what any of his serious health concerns are. A review of the Defendant's BOP medical records indicates that the Defendant does suffer from hypertension, a condition which has been identified as a potential COVID-19 risk factor, as well as numerous other health conditions. These records also indicate, however, that these conditions are being adequately monitored and treated with appropriate medications. [Docs. 39, 40].

The Court further notes that, contrary to the Defendant's argument, the Federal Bureau of Prisons ("BOP") has taken significant measures to protect the health of its inmates. See United States v. Johnson, No. 1:19-cr-00020-MR-WCM, 2020 WL 7646809, at *2-3 (W.D.N.C. Dec. 23, 2020) (Reidinger, C.J.). In addition to these measures, BOP has offered vaccinations to both inmates and staff, which has conferred inmates such as the Defendant further protection from the virus.[2] Taken together, these measures are designed to mitigate sharply the risks of COVID-19 transmission in BOP institutions while allowing BOP to continue to fulfill its mandate of incarcerating those persons sentenced or detained based on judicial orders.

---

[2] The BOP medical records indicate that the Defendant has contracted the COVID-19 virus twice, suffered only mild symptoms, and fully recovered each time. [Doc. 39 at 69, Doc. 40 at 153]. The Defendant was repeatedly offered the COVID-19 vaccine, but has refused to be vaccinated based on his personal belief that the "side effects [of the vaccine] could kill [him] because of [his] heart condition." [Doc. 41-1 at 7].

9

Given BOP's efforts, the fact that the Defendant faces a potential risk of contracting the virus again while incarcerated, without more, is not sufficient to justify the relief he requests. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").

Even if the Defendant could establish an extraordinary and compelling reason for his release, this Court still must consider the § 3553(a) factors, as "applicable," as part of its analysis of determining whether a sentence reduction is warranted. See § 3582(c)(1)(A); United States v. Chambliss, 948 F.3d 691, 694 (5th Cir. 2020).

Here, the Defendant's firearm offenses arose from a particularly brutal crime that he committed when he was 41 years old. Prior to that, he had incurred a significant criminal history, including convictions for felony battery and driving under the influence. He has received five disciplinary citations while in the BOP, and his efforts at rehabilitation are not extraordinary. [See Doc. 41-1]. Additionally, the Defendant has already benefitted from a sentence that was 60 months below the advisory Guidelines range. The

10

Court finds that the relevant § 3553(a) sentencing factors, including the need for the sentence to reflect the true extent and seriousness of the Defendant's offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, and to protect the public from the Defendant's further crimes, counsel against a further reduction of the Defendant's sentence.

In sum, the Court finds that there are no "extraordinary and compelling reasons" for the Defendant's release and that analysis of the relevant § 3553(a) factors continue to weigh in favor of his continued incarceration. Accordingly, the Defendant's Motion for Compassionate Release is denied.

**IT IS, THEREFORE, ORDERED** that the Defendant's "Compassionate Release Motion for Reduction of Sentence Under 18 U.S.C. § 3582(c)(1)(A)" [Doc. 38] is **DENIED**.

**IT IS SO ORDERED.**

Signed: October 30, 2022

Martin Reidinger
Chief United States District Judge